FILED
CHARLOTTE, NC

JUN 17 2025

US DISTRICT COURT
WESTERN DISTRICT OF NC

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | DOCKET NO. 3:25-cr-143-MOC |
| | ) | |
| v. | ) | **BILL OF INFORMATION** |
| | ) | |
| DAVID CORY HILL | ) | 18 U.S.C. § 371 |
| | ) | 18 U.S.C. § 1957 |
| | ) | |

**THE UNITED STATES ATTORNEY CHARGES**:

At the specified time and at all relevant times:

### Introduction

1. Beginning no later than February 20, 2020, and continuing until at least September 30, 2022, within the Western District of North Carolina and elsewhere, DAVID CORY HILL (HILL) and others conspired to defraud the South Carolina Medicaid Program (SC Medicaid) by directing and causing Medicaid billing provider companies to submit false and fraudulent reimbursement claims for behavioral health services that were not performed. During the course of the conspiracy, HILL and his conspirators used and caused the unauthorized use of personal identifying information (PII) of at least 179 SC Medicaid beneficiaries.

2. HILL, DHC, and companies assisted by HILL were paid over $1.9 million dollars by SC Medicaid for reimbursement of false and fraudulent claims for services not rendered, the proceeds of which were used to conduct monetary transactions in excess of $10,000.

### Relevant Individuals and Entities

3. DAVID HILL incorporated David Hill Consultants, LLC (DHC) in North Carolina on or about March 20, 2019. DHC was enrolled as a SC Medicaid provider on or about February 20, 2020, with HILL identified as its contact person. DHC shared offices with Coconspirator 1 and other businesses at 3557 North Sharon Amity Road, Charlotte, North Carolina.

4. Coconspirator 1—a resident of Charlotte, North Carolina—was an organizer and leader of the scheme to defraud SC Medicaid who advised HILL and others on how to create Medicaid billing provider companies. In exchange, Coconspirator 1 received a portion of the illegal proceeds generated by such companies, including DHC.

5. Coconspirator 2—a resident of Charlotte, North Carolina, and Buffalo, New York—organized Medna and four other Medicaid billing providers for the purpose of submitting false and fraudulent claims to SC Medicaid. Conspirator 2 paid Coconspirator 1 a portion of the proceeds generated by such companies.

6. Medna Cares LLC (Medna) was incorporated in South Carolina by Coconspirator 2 on or about March 4, 2022. A nominee was listed as Medna's registered agent and manager. Medna was enrolled as a SC Medicaid Provider. Medna billed SC Medicaid with the help and advice of Coconspirator 1 and HILL from Coconspirator 1's offices at 3557 North Sharon Amity Road, Charlotte, North Carolina. Medna's bank account was opened in Charlotte, North Carolina.

7. Coconspirator 3—an Assistant Professor of Social Work and resident of Manning, South Carolina—was an office manager for Coconspirator 1 and helped in the day-to-day operations of the SC Medicaid fraud scheme, including procuring the names and PII of Medicaid beneficiaries and licensed professionals necessary to submit Medicaid claims.

8. Coconspirator 4—an employee of the State of South Carolina and a resident of Elgin, South Carolina—facilitated fraudulent Medicaid billing by supplying the National Provider Identification (NPI) numbers of licensed behavioral health professionals to the coconspirators. Coconspirator 4 also created and caused the creation of fictitious clinical service notes (CSNs), which she provided to the coconspirators.

9. Coconspirator 5—a resident of Kingstree, South Carolina—was employed as a case manager for a Medicaid provider in South Carolina with access to Medicaid beneficiary numbers and PII.

10. During the investigation, law enforcement officers created fictitious Medicaid beneficiary identities in coordination with SC Medicaid, who assigned Medicaid numbers to the fictitious identities and tracked them through its claims systems. Approximately 20 fictitious identities were purchased by HILL, who believed they were eligible Medicaid beneficiaries. HILL submitted fraudulent Medicaid claims using one or more of the fictitious identities.

### The South Carolina Medicaid Program

11. SC Medicaid was a state-administered program aided by federal funds. SC Medicaid operates, in relevant part, as follows:

    a. SC Medicaid was a health care program that helped pay for reasonable and medically necessary services for qualifying, enrolled individuals and their families, referred to herein as "beneficiaries." Covered services included behavioral health care. The SC Medicaid Program was administered by the South Carolina Department of Health and Human Services (referred to herein as SCDHHS).

2

Case 3:25-cr-00143-MOC-DCK    Document 1    Filed 06/17/25    Page 2 of 7

b. Qualified individuals could enroll as SC Medicaid beneficiaries. At the time of enrollment, beneficiaries received unique alphanumeric codes issued by the program, known as Medicaid identification numbers. Beneficiaries used their Medicaid identification numbers to receive covered services.

c. SC Medicaid beneficiaries received services from medical practitioners (referred to herein as "rendering providers") and companies who employed medical practitioners (referred to herein as "billing providers"). Rendering providers and billing providers were required to obtain a federal identification number, known as an "NPI" number. Rendering and billing providers certified that they would only bill SC Medicaid for medically necessary services they actually performed. Eligible beneficiaries could receive behavioral health services from a variety of qualified Medicaid providers located within the South Carolina Medical Service Area, which was defined as the State of South Carolina and areas in North Carolina and Georgia within 25 miles of the South Carolina border.

d. Enrolled billing providers in good standing could submit claims to SCDHHS for reimbursement through an electronic portal without documentation of the service provided. Such claims included, among other information, the rendering provider's NPI number, the beneficiary's Medicaid number, date(s) of services, and applicable medical procedure and diagnosis codes.

e. Billing providers were also required to maintain clinical records for each SC Medicaid beneficiary that fully described the extent of the services they were provided. A beneficiary's clinical record included, among other documents, diagnostic assessments establishing medical necessity, individual plans of care (IPOCs), and clinical service notes (CSNs). Clinical records were signed by a qualified rendering provider and included sufficient details to justify SC Medicaid reimbursement according to the services stated in the claim.

f. SC Medicaid would initiate audits in order to ensure that claims presented by a provider met the requirements of federal and state laws and regulations. Providers whose claims did not meet SC Medicaid requirements could be subject to recoupment for amounts paid on deficient past claims and could be placed on prepayment review for future claims. Providers on prepayment review were required to submit documentation supporting their claims before they could be reimbursed for their services.

12. SC Medicaid was a "health care benefit program," as defined in Title 18, United States Code, Section 24(b).

## COUNT ONE
**18 U.S.C. § 371**
**Conspiracy**

13. Paragraphs 1 through 12 of this Bill of Information are realleged and incorporated by reference.

3

14. Beginning no later than February 20, 2020, and continuing until on or about September 30, 2022, in Mecklenburg County, within the Western District of North Carolina, and elsewhere, the defendant,

**DAVID CORY HILL**

did knowingly combine, conspire, confederate, and agree with Coconspirators 1, 2, 3, 4, and 5, and persons known and unknown to the United States Attorney, to defraud the United States and to commit offenses against the United States.

### Objects of the Conspiracy

15. The objects of the conspiracy included the following offenses against the United States:

    a. Knowingly and willfully making materially false, fictitious, or fraudulent statements and representations and making and using materially false writing or documents in connection with the delivery of and payment for health care benefits, items, or services involving a health care benefit in violation of Title 18, United States Code, Section 1035(a);

    b. Knowingly transferring, possessing, and using, without lawful authority, the means of identification of another actual person during and in relation to health care fraud in violation of Title 18, United States Code, Section 1028A; and

    c. Knowingly and willfully executing and attempting to execute a scheme and artifice to defraud a health-care benefit program and to obtain the money or property owned by, or under the custody or control of, a health-care benefit program, by means of material false or fraudulent pretenses, representations, or promises in connection with the delivery of and payment for health-care benefits, items, and services in violation of Title 18, United States Code, Section 1347.

### Manner and Means

16. HILL and his coconspirators carried out the conspiracy through the following manner and means, among others:

    a. They would cause DHC and other companies, including Medicaid billing providers in the names of nominees, to be incorporated and enrolled with SCDHHS as behavioral health care providers.

    b. They would pay kickbacks from the proceeds of fraudulent Medicaid claims to Coconspirator 1 for his role in setting up their fraudulent billing companies and the scheme.

    c. When their billing provider companies were placed on prepayment review, they would cause additional billing provider companies, including Medna, to be incorporated in the names of nominees and enrolled with SCDHHS in order to keep billing SC Medicaid.

d. They would obtain the PII of SC Medicaid-enrolled beneficiaries, such as their names, addresses, dates of birth, and Medicaid beneficiary numbers. HILL and his co-conspirators knew that the SC Medicaid-eligible beneficiary names and PII that they transferred, possessed, and used and caused others to transfer, possess and use belonged to actual persons. HILL and his conspirators would pay Coconspirator 5 and others for stolen Medicaid beneficiary PII.

e. They would obtain the credentials and NPIs of SC Medicaid-enrolled behavioral health professionals. HILL and his coconspirators would use the NPIs of such licensed professionals on claims submitted to SC Medicaid, often without the professionals' knowledge or authorization.

f. They would cause the creation of fictitious CSNs to support fraudulent Medicaid claims in the event of an audit or inspection. Such fictitious and fraudulent CSNs were provided to SCDHHS investigators performing on-site inspections at 3557 North Sharon Amity Road, Charlotte, North Carolina, and in the pre-payment review process.

## Overt Acts

17. In furtherance of the conspiracy and to effect the objects thereof, there was committed by at least one of the conspirators, in the Western District of North Carolina and elsewhere, at least one of the following overt acts, among others:

    a. On or about February 20, 2020, HILL enrolled and caused DHC to be enrolled as a SC Medicaid provider with offices at 3557 North Sharon Amity Road, Charlotte, North Carolina.

    b. Between on or about August 21, 2020 and February 24, 2022, HILL transferred approximately $327,987 to Coconspirator 1 for his share of the illegal proceeds generated by DHC and other billing provider companies.

    c. Between on or about January 7, 2021, and April 21, 2021, HILL exchanged text messages with Coconspirator 5 to facilitate his purchase, use, and transfer of Medicaid beneficiary PII.

    d. Between on or about March 2, 2021, and on or about August 16, 2022, HILL transferred and caused the transfer of the name and PII of Medicaid Beneficiary R.L., without his/her authority. HILL used R.L.'s PII to submit approximately 100 claims to SCDHHS totaling more than $10,000 on behalf of DHC for behavioral health services. In truth and in fact, R.L. did not receive the services listed on DHC's claims.

    e. Between on or about March 18, 2021, and on or about September 15, 2022, HILL transferred and caused the transfer of the name and PII of Medicaid Beneficiary A.C. without his/her authority. HILL used A.C.'s PII to submit approximately 99 claims to SCDHHS totaling more than $11,000 on behalf of DHC for behavioral health services. In truth and in fact, A.C. was a minor who was incapable of

5

receiving, and did not in fact receive, the behavioral health services listed in the claims submitted to SCDHHS.

f. Between on or about August 20, 2021 and on or about April 5, 2023, HILL paid Coconspirator 4 and her company more than $167,000 for the names and NPIs of rendering providers, which he then used to submit claims to SCDHHS for behavioral health services that were not performed by such rendering providers.

g. Between on or about June 6, 2022, and on or about August 16, 2022, HILL transferred and caused the transfer of the name and PII of Medicaid Beneficiary H.B. without his/her authority. HILL used H.B.'s PII to submit approximately 14 claims to SCDHHS totaling more than $1,500 for behavioral health services. In truth and in fact, H.B. was a child who did not receive the services listed on DHC's Medicaid claims.

h. Between on or about July 2, 2022, and September 15, 2022, HILL and Conspirators 1, 2, and 3, and others known to the United States Attorney purchased the PII of approximately 36 persons who they believed to be Medicaid beneficiaries, but in fact were fictitious identities. Thereafter, HILL submitted fraudulent claims to SCDHHS using one or more of these fictitious identities.

All in violation of Title 18, United States Code, Section 371.

## COUNT TWO
## 18 U.S.C. § 1957
## (Money Laundering)

18. Paragraphs 1 through 17 of this Bill of Information are realleged and incorporated by reference.

19. On or about April 16, 2021, in Mecklenburg County, within the Western District of North Carolina, and elsewhere, the defendant,

**DAVID CORY HILL**

did knowingly engage, attempt to engage, and cause others to engage in a monetary transaction by, through, or to a financial institution, affecting interstate or foreign commerce, in criminally derived property of a value greater than $10,000, to wit, a cash withdrawal in the amount of $11,110 from DHC's bank account, which involved the proceeds of a specified unlawful activity, that is, health care fraud in violation of Title 18, United States Code, Section 1347, and that while conducting and attempting to conduct such monetary transaction knowing that the property involved in the monetary transaction, that is funds fraudulently received from SC Medicaid, represented the proceeds of some form of unlawful activity.

All in violation of Title 18, United States Code, Section 1957.

6

Case 3:25-cr-00143-MOC-DCK    Document 1    Filed 06/17/25    Page 6 of 7

## NOTICE OF FORFEITURE

Notice is hereby given of 18 U.S.C. §§ 982 and 28 U.S.C. § 2461(c). Under § 2461(c), criminal forfeiture is applicable to any offenses for which forfeiture is authorized by any other statute, including but not limited to 18 U.S.C. § 981 and all specified unlawful activities listed or referenced in 18 U.S.C. § 1956(c)(7), which are incorporated as to proceeds by § 981(a)(1)(C). The following property so subject to forfeiture in accordance with sections 982 and/or 2461(c):

a. All property which constitutes or is derived from proceeds of the violations set forth in Count One of this Bill of Information;

b. All property involved in the violation set forth in Count Two of this Bill of Information; and

c. If, as set forth in 21 U.S.C. § 853(p), any property described in (a) and (b) cannot be located upon the exercise of due diligence, has been transferred or sold do, or deposited with, a third party, has been placed beyond the jurisdiction of the court, has been substantially diminished in value, or has been commingled with other property which cannot be divided without difficulty, all other property of the defendant to the extent of the value of the property described in (a).

The following property is subject to forfeiture on one or more of the grounds stated above: a forfeiture money judgment for all currency and monetary instruments that were involved in the crimes alleged in this Bill of Information, including but not limited to the sum of approximately $1,966,117.

RUSS FERGUSON
UNITED STATES ATTORNEY

_____
Michael Savage
Graham Billings
Assistant United States Attorneys

7